# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **Aragonite Capital Markets, LLC** <br> **d/b/a Argonite Partners, LLC;** | **Case No. 1:22-CV-00222** |
| **Plaintiff,** | **JUDGE PAMELA A. BARKER** |
| **-vs-** | |
| **Dark Horse Media, LLC, et al.,** | **MEMORANDUM OF OPINION AND ORDER** |
| **Defendants** | |

Currently pending is Plaintiff Aragonite Capital Markets, LLC's "Renewed and Supplemented Motion for an Order of Prejudgment Attachment and Request for Emergency Hearing," filed February 11, 2022.  (Doc. No. 8.)   Defendants Dark Horse Media, LLC and Cenic Media (Delaware) Inc. filed a Brief in Opposition on February 18, 2022, to which Plaintiff replied on February 23, 2022.  (Doc. Nos. 17, 18.)  For the following reasons, Plaintiff's Motion is DENIED.

## I. Background

### A. Factual Allegations in the Complaint and *Ex Parte* Motions for Temporary Restraining Order and for Prejudgment Attachment (Doc. Nos. 1, 2, 3.)

On February 8, 2022, Plaintiff Aragonite Capital Markets, LLC d/b/a Argonite Partners, LLC (hereinafter "Plaintiff" or "Aragonite") filed a Complaint in this Court against Defendants Dark Horse Media, LLC and Cenic Media (Delaware), Inc., asserting claims for breach of contract (Count I) and recovery of attorney fees (Count II).  (Doc. No. 1.)  On that same date, Plaintiff filed *Ex Parte* Motions

for Temporary Restraining Order ("TRO) and Preliminary Injunction (Doc. No. 2) and for Prejudgment Attachment without Notice or Hearing (Doc. No. 3).[1]

In these filings, Plaintiff alleges as follows.  Plaintiff is a small business headquartered in Beachwood, Ohio that provides financial advisory services to individuals and business entities.  (Doc. No. 1 at ¶ 7.)  Defendant Dark Horse Media, LLC (hereinafter "Dark Horse") is an entertainment company that develops, publishes, and licenses comics, digital media, consumer products, games, and "location-based entertainment" in the United States and China.  (*Id.* at ¶ 8.)  Plaintiff alleges that Defendant Cenic Media (Delaware), Inc. (hereinafter "Cenic") is a holding company that owns 80% of the limited liability company membership interests in Dark Horse.[2]  (*Id.* at ¶ 9.)

Plaintiff alleges that, on January 26, 2021, it entered into a "written engagement letter agreement" (hereinafter "the Agreement") with Dark Horse.  (*Id.* at ¶ 10.)  This Agreement is attached to the Complaint as an Exhibit and is addressed to, and signed by, Mr. Hanson He, who is identified in the Agreement as "Board Member and CEO" of Dark Horse with a business address in Shanghai, China.  (Doc. No. 1-1.)  Pursuant to this Agreement, Dark Horse engaged Aragonite as Dark Horse's

---

[1] In subsequent filings, counsel for Plaintiff represented that, although captioned "*ex parte*," Plaintiff's Motion for TRO and Preliminary Injunction (Doc. No. 2) is filed on the public docket and, thus, available to defendants and the public. *See* Doc. No. 8-1 at fn 1.  Plaintiff is incorrect. The docket reflects (and the Clerk's Office has confirmed) that the *Ex Parte* Motion for TRO and Preliminary Injunction (Doc. No. 2) was filed as an "*ex parte*" filing and, as such, is restricted to court users and the filing party only.  Plaintiff acknowledges that its *Ex Parte* Motion for Prejudgment Attachment was not filed on the public docket.  (Doc. No. 8-1 at fn 2.)  Plaintiff has not provided any reasoning or justification for why either of these two Motions should not be publicly available.  Accordingly, the Court will direct the Clerk's Office to lift restricted access to both Plaintiff's *Ex Parte* Motion for TRO and Preliminary Injunction (Doc. No. 2) and *Ex Parte* Motion for Prejudgment Attachment (Doc. No. 3).

[2] In the Complaint, Plaintiff alleges that Dark Horse is a Delaware company with its principal place of business in Clackamas County, Oregon, and that Cenic is a Delaware company that "maintains a business address in New Castle County, Delaware." (Doc. No. 1 at ¶¶ 3, 4.)  In its Motion for TRO, Plaintiff states that these Defendants are "two foreign limited liability companies controlled by a Chinese corporation based in Hong Kong." (Doc. No. 2-1 at p. 1.)  The Court also notes that the Engagement Agreement allegedly entered into between Plaintiff and Dark Horse lists a business address for Dark Horse Media in Shanghai, China.  (Doc. No. 2-2 at PageID# 50.)

sole and exclusive financial advisor, during the term of the Agreement, to advise and assist Dark Horse in connection with the planning, execution, and closing of a "Sale" as that term is defined in the Agreement.[3]  (Doc. No. 1 at ¶ 10.)  The term of the Agreement is from January 26, 2021 to January 26, 2022.  (*Id.* at ¶ 11.)

Of particular relevance herein, the Agreement provides that Dark Horse will pay to Aragonite a retainer fee in the amount of $50,000 in two separate, equal installments, with the first installment of $25,000 payable upon execution of the Agreement and the second installment of $25,000 payable upon the earlier of the closing of the Sale or the expiration of the Agreement.  (*Id.* at ¶ 15.)  Plaintiff alleges that it was paid the first installment of the Retainer.  (*Id.* at ¶ 16.)  The Agreement also provides that Dark Horse will pay to Aragonite an additional transaction fee (hereinafter "Transaction Fee") equal to six percent of the "Consideration" (as defined in the Agreement)[4] arising from any Sale occurring during the term of the Agreement or a period of 12 months following the expiration of the term.  (*Id.* at ¶ 17.)

Plaintiff alleges that it fully performed the services required of it under the Agreement.  (*Id.* at ¶ 14.)  On December 21, 2021, however, Plaintiff learned through various press releases that

---

[3]  The Agreement defines the term "Sale" as "any transaction or series or combination of transactions other than in the ordinary course of trade or business, whereby, directly or indirectly, control of a material interest in the Company or any of its businesses, subsidiaries, or affiliates (a 'Business'), securities, assets, or intellectual property is transferred to a third party (the 'Investor' or 'Investors') for Consideration (as defined below), including, without limitation, a sale or exchange of capital stock or assets, a lease of assets with or without a purchase option, a merger or consolidation, a recapitalization, a tender or exchange offer, a leveraged buy-out, the formation of a joint venture, minority investment or partnership, sale of assets or intellectual property, or any similar transaction." (Doc No. 1-1 at ¶ 3(a)).

[4]  The Agreement defines the term "Consideration" as the "full transaction value of any Sale including, without limitation, the total value of all cash (including escrowed funds), securities, assumed indebtedness (other than ordinary course operating liabilities assumed by the acquiring party), other property and any contingent, earned or other consideration paid or payable, directly or indirectly, by an acquiring party to a selling party or to a participant in the transaction in connection with a Sale." (Doc. No. 1-1 at ¶ 3(b)).

3

Defendants had entered into an agreement with Embracer Group AB ("Embracer") whereby Embracer planned to acquire Dark Horse.  (*Id*. at ¶ 19.)  These Press Releases are attached as Exhibits to Plaintiff's *Ex Parte* Motion for TRO.  (Doc. No. 2-2.)  They indicate that Embracer is based in Karlstad, Sweden and that its acquisition of Dark Horse is "estimated to be completed [in] early 2022."[5]  (*Id*. at PageID# 61.)  The Press Releases further state that a company called "Lazard" acted as financial advisor to Dark Horse.  (*Id*.)  The purchase price is not disclosed.[6]  (*Id*. at PageID# 60.)

On December 31, 2021, Plaintiff, through counsel, sent a letter to Dark Horse demanding that Dark Horse make arrangements to pay Plaintiff a Transaction Fee under the terms of the Agreement. (*Id*. at ¶ 21.)  Counsel for Dark Horse responded via letter dated January 6, 2022.  (Doc. No. 2-2 at PageID# 72.)  Therein, Dark Horse refused to make any payment to Plaintiff, explaining as follows:

> Dark Horse has no obligation to and will not pay any fees Argonite Partners ("Argonite") claims is due under the terms of the Claimed Agreement because the Claimed Agreement is unenforceable against and not binding upon Dark Horse. Specifically, **Argonite's retention and the Claimed Agreement were not authorized by Dark Horse and the officers of Dark Horse had no knowledge of this Claimed Agreement until receiving your Demand Letter referenced above**. Not only was the Claimed Agreement not authorized, the Company did not pay the retainer fee supposedly required thereunder, a fact which Argonite never complained about, which demonstrates that Argonite did not believe an agreement existed (until last week).  In addition, the purported signatory to the Claimed Agreement on Dark Horse's behalf is Mr. Hanson He, who is identified as "Board Member and CEO." **However, Mr. He is not the CEO (or any other officer) of Dark Horse and had no authority to retain Argonite or enter into the Claimed Agreement on behalf of Dark Horse.**  Only officers of Dark Horse have the authority to bind the Company in such a transaction, and then only after approval of such an agreement by the Board of Managers of the Company. The Board of Managers was never presented this

---

[5] The Press Releases also state that "80 percent of the shares of Dark Horse will be acquired from a seller based in Hong Kong and China.  The remaining 20 percent of the shares will be acquired from founder and CEO, Mike Richardson and COO Neil Hankerson."  (*Id*. at PageID# 60.)

[6] Plaintiff's Managing Director, Brennan Igoe, avers that Plaintiff "reasonably believes the purchase price to be in excess of $160,000,000."  (Feb. 7, 2022 Decl. of Brennan Igoe (Doc. No. 2-2) at ¶ 17.)  In its *Ex Parte* Motion for TRO, Plaintiff estimates that it is owed a Transaction Fee "in excess of $10,000,000."  (Doc. No. 2-1 at p. 11.)

> Claimed Agreement, and if they were, they would not have approved it. Therefore, Dark Horse is not responsible for paying the Transaction Fee.

(*Id.*) (emphasis added).  As noted *supra*, Plaintiff thereafter filed the instant action (as well as its *Ex Parte* Motions for TRO and for Prejudgment Attachment without Notice or Hearing) on February 8, 2022.  (Doc. Nos. 1, 2, 3.)

**B.**     **Denial of *Ex Parte* Motions for TRO and for Prejudgment Attachment**

The Court issued a Memorandum Opinion & Order on February 9, 2022 denying Plaintiff's *Ex Parte* Motions for TRO and for Prejudgment Attachment.  (Doc. No. 6.)  With regard to Plaintiff's *Ex Parte* Motion for a TRO, the Court found that Plaintiff had failed to demonstrate that it is likely to succeed on the merits of its breach of contract claim in light of Dark Horse's assertion that Mr. He did not have actual or apparent authority to enter into the Agreement in the first instance.  (*Id.* at p. 7.)  The Court further found that Plaintiff had failed to establish irreparable harm because it cited no evidence in support of its conclusory assertion that Defendants will convert Dark Horse's property in such a fashion that all of its assets will be irretrievably lost if a TRO is not entered.  (*Id.*)  Lastly, the Court found that Plaintiff had failed to sufficiently explain the basis for its assertion that it is owed a Transaction Fee in the amount of $10,000,000, in light of the fact that the Press Releases attached to the Motion do not disclose the purchase price.  (*Id.*)

With regard to Plaintiff's *Ex Parte* Motion for Prejudgment Attachment without Notice or Hearing, the Court likewise denied the Motion on the grounds that Plaintiff had failed to demonstrate either probable cause or irreparable harm.  (*Id.* at pp. 8-11.)  Of particular relevance, the Court explained as follows:

> For largely the same reasons set forth *supra* in connection with Plaintiff's *Ex Parte* Motion for TRO, the Court finds that Plaintiff has failed to sufficiently demonstrate either probable cause or irreparable injury. Specifically, at this stage of the

5

proceedings, the Court finds Plaintiff has not demonstrated that it is likely to obtain judgment against Defendants because it has failed to come forward with sufficient evidence or argument that Mr. He had actual and/or apparent authority to bind Defendants to the January 2016 Agreement. Further, and for the reasons discussed above, the Court finds that Plaintiff has failed to come forward with sufficient evidence that it will suffer irreparable injury, as that term is defined in Section 2715.045(B)(1) and/or (2).

(*Id*. at p. 11.)

### C. Plaintiff's "Renewed and Supplemented Motion for An Order of Prejudgment Attachment and Request for Emergency Hearing" (Doc. No. 8)

At 11:18 p.m. on Friday, February 11, 2022, Plaintiff filed a document captioned "Renewed and Supplemented Motion for an Order of Prejudgment Attachment, and Request for Emergency Hearing." (Doc. No. 8.) This "Renewed Motion" attaches the affidavits of Plaintiff's Managing Director, Brennan Igoe, and Plaintiff's counsel Nathaniel R. Sinn, as well as over 100 hundred pages of exhibits.[7] (Doc. Nos. 8-2, 8-3.) Therein, Plaintiff presents additional evidence in support of its request for prejudgment attachment regarding (1) the corporate structure of Dark Horse and Cenic; (2) the payment of the first installment of the Retainer Fee; (3) the services that Plaintiff allegedly performed under the Agreement; (3) the individuals from Dark Horse that Plaintiff interacted with in performing services under the Agreement; and (4) the reason for the removal of Mr. He and Stanley Cheung as officers and board members of Cenic and Dark Horse. (Affidavit of Brennan Igoe dated February 11, 2022 (Doc. No. 8-2) at ¶¶ 4-6, 12, 14-17, 19, 28, 42.)

Specifically, with regard to Defendants' corporate structure, Mr. Igoe avers as follows:

4.     To the best of my knowledge, Cenic Media (Delaware), Inc. ("Cenic") is the majority owner of Dark Horse Media, LLC ("Dark Horse"), holding eighty percent (80%) of the membership interests of Dark Horse.

---

[7] As discussed *infra*, at the time it filed its "Renewed Motion," Plaintiff did not file the praecipe required by Ohio Rev. Code § 2715.041(A).

5. To the best of my knowledge, the remaining twenty percent (20%) of the membership interests of Dark Horse are held by Dark Horse officers and employees Mr. Mike Richardson, the Chief Executive Officer, and Mr. Neil Hankerson, the Chief Operating Officer.

6. To the best of my knowledge, Cenic is a wholly owned subsidiary of Visionary Vanguard Associates, Ltd. ("VVA").

\*\*\*

15. To the best of my knowledge, as of the effective date of the Engagement Agreement, Mr. Hanson He was a board member of Dark Horse, and the Chief Executive Officer of Cenic.

16. To the best of my knowledge, as of the effective date of the Engagement Agreement, Mr. Stanley Cheung was the board chairman of the Dark Horse, and the Chief Executive Officer of VVA.

17. To the best of my knowledge, both Mr. Stanley Cheung and Mr. Hanson He were removed as board members and/or officers of VVA, Cenic, and Dark Horse in or around June 2021.

(*Id*. at ¶¶ 4- 6, 15-17.) With regard to the Retainer Fee, Mr. Igoe avers that "the Company paid the first installment of the Retainer to Argonite following execution of the Engagement Agreement" and attaches a wire confirmation dated May 11, 2021 from VVA to Plaintiff in the amount of $25,000. (*Id*. at ¶ 19.) *See* Doc. No. 8-2 at PageID# 220.

Mr. Igoe goes on to aver that Plaintiff "worked with key employees of Dark Horse and the Company during the Term of the Engagement Agreement, including but not limited to: Mr. Mike Richardson; Mr. Neil Hankerson; Mr. Hanson He; and Mr. Stanley Cheung." (Feb. 11, 2022 Igoe Aff. (Doc. No. 8-2) at ¶ 14.) He then provides several specific examples of such interactions, including discussions on March 2 and 3, 2021 with Dark Horse officers and/or employees Mr. Hankerson, Mr. Richardson, Sunny Meng, Mr. Cheung, Matthew Cheung, and Tom Weddle. (*Id*. at ¶ 13(a) and (b)). Mr. Igoe also provides specific examples of certain services that Plaintiff allegedly

7

performed pursuant to the Agreement, including making "numerous solicitations" to potential Investors; causing approximately 20 non-disclosure agreements to be executed with potential investors to enable due diligence investigations; facilitating introductions with six potential investors; facilitating and engaging in various discussions between Dark Horse and Summit Partners, a private equity firm headquartered in Boston; participating in numerous phone calls and exchanging voluminous emails with Dark Horse; and giving "input and guidance in the preparation of a comprehensive slide deck . . . to present to potential investors." (*Id.* at ¶ 13(c) –(h)).

Finally, Mr. Igoe authenticates and attaches as Exhibits several letters (dated April 20, 2021, June 7, 2021, and February 10, 2022) and a Deed of Appointment dated April 19, 2021.  (*Id.* at ¶ 42.) Mr. Igoe does not clearly explain what these Exhibits mean or how they are relevant to Plaintiff's request for prejudgment attachment.  In the "Renewed Motion" itself, however, Plaintiff states that "upon information and belief, Mr. Cheung and Mr. He's removal was a result of VVA's lender exercising its alleged rights against its collateral, the shares of VVA."  (Doc. No. 8-1 at p. 6.)

Based on the above, Plaintiff requested that the Court (1) schedule an emergency hearing on the following Monday, February 14, 2022; and (2) "attach, prior to judgment, the property of Defendants in order to protect Plaintiff Aragonite from irreparable injury and preserve its ability to collect upon a judgment rendered in its favor on its meritorious breach of contract claim."  (Doc. No. 8 at p. 1; Doc. No. 8-2 at p. 1-2.)

The Court conducted a telephonic status conference at 3:30 p.m. on Monday, February 14, 2022.[8]  (Doc. No. 10.)   Counsel for Plaintiff and newly retained local counsel for Dark Horse

---

[8] Plaintiff had not formally served either Defendant at the time of the conference.  However, when the Court set the conference, it ordered counsel for Plaintiff to immediately notify counsel for Defendants of the date and time thereof.

participated in the conference.  (*Id*.)  Defendant Cenic, however, did not participate and was not represented by counsel.  (*Id*.)  During the conference, counsel for Plaintiff insisted that this Court was required to conduct an oral, evidentiary hearing on its Renewed Motion, emphasizing that the Court had no discretion on this issue and that a hearing was "mandatory."  Counsel for Dark Horse argued that Plaintiff had failed to comply with the notice requirements set forth in Ohio Rev. Code § 2715.041 and that Defendant would not waive this notice requirement.  After much discussion, counsel for Plaintiff acknowledged this notice deficiency.  (*Id*.)

Out of an abundance of caution, and until such time that it could give further consideration to the parties' arguments, the Court set a hearing on Plaintiff's "Renewed Motion" for March 4, 2022. The Court also set a briefing schedule, allowing Dark Horse to file its Brief in Opposition by February 18, 2022 and Plaintiff to file a Reply by February 23, 2022.  (*Id*.)  Lastly, the Court ordered Dark Horse to file, by no later that February 23, 2022, a Notice advising the Court and counsel for Plaintiff regarding the status of the alleged sale of Dark Horse to Embracer Group AB.  (*Id*.)

On February 16, 2022, the same counsel representing Dark Horse entered an appearance on behalf of Defendant Cenic.  (Doc. No. 12.)  Several days later, on February 18, 2022, Defendants filed, under seal, a Notice regarding the alleged sale of Dark Horse to Embracer Group.  (Doc. Nos. 14, 15, 16.)  On that same date, Defendants filed their Brief in Opposition to Plaintiff's "Renewed Motion."  (Doc. No. 17.)  On February 23, 2022, Plaintiff filed a Reply in support of its Renewed Motion as well as a Praecipe pursuant to Ohio Rev. Code § 2715.041.[9]  (Doc. Nos. 18, 19.)

---

[9] The docket reflects that service was returned executed on Dark Horse on February 22, 2022.  (Doc. No. 22.)  As of the date of this Order, service has not yet been returned executed on Defendant Cenic.

## II.    Legal Framework

Federal Rule of Civil Procedure 64(a) provides that "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies." Accordingly, when there is no controlling federal statute, "Ohio federal courts apply Ohio law 'to determine if prejudgment attachment is appropriate.'" *Data Processing Sciences Corp. v. Lumenate Technologies, LP*, 2016 WL 3144117 at *2 (S.D. Ohio June 6, 2016) (quoting *Nationwide Mut. Ins. Co. v. Whiteford Sys., Inc.*, 787 F. Supp. 766, 758 (S.D. Ohio 1992)).   Here, neither party asserts that there is a controlling federal statute and, therefore, the Court applies Chapter 2715 of the Ohio Revised Code.

Pursuant to Ohio Revised Code § 2715.01, "[a]n attachment against the property, other than personal earnings, of a defendant may be had in a civil action for the recovery of money, at or after its commencement, upon any one of" several enumerated grounds.[10] To support a request for prejudgment attachment under this statute, the plaintiff must file a written motion for attachment accompanied by an affidavit setting forth the following specific information:

> (A) The nature and amount of the plaintiff's claim, and if the claim is based upon a written instrument, a copy of that instrument;
>
> (B) The facts that support at least one of the grounds for an attachment contained in section 2715.01 of the Revised Code;
>
> (C) A description of the property sought and its approximate value, if known;

---

[10] In the instant case, Plaintiff relies on §§ 2715.01(A)(1), (A)(2) and (A)(7), which provide the following grounds for attachment: "(1) Excepting foreign corporations which by compliance with the law therefore are exempted from attachment as such, that the defendant or one of several defendants is a foreign corporation; (2) That the defendant is not a resident of this state; *** (7) That the defendant is about to convert property, in whole or part, into money, for the purpose of placing it beyond the reach of creditors."  Ohio Rev. Code §§ 2715.01(A)(1), (2), and (7).

(D) To the best of plaintiff's knowledge, the location of the property;

(E) To the best of the plaintiff's knowledge, after reasonable investigation, the use to which the defendant has put the property and that the property is not exempt from attachment or execution.

(F) If the property sought is in the possession of a third person, the name of the person possessing the property.

Ohio Rev. Code §§ 2715.03(A) – (F).   Additionally, Section 2715.041 requires that, "upon the filing of the motion for an order of attachment pursuant to section 2715.03 of the Revised Code, the plaintiff shall file with the clerk of court a praecipe instructing the clerk to issue to the defendant against whom the motion was filed a notice of the proceeding."  Ohio Rev. Code § 2715.041(A).

"'Only upon determining that Plaintiff has satisfied these requirements may the Court consider the actual motion for attachment.'"  *Enable Healthcare, Inc. v. Cleveland Quality Healthnet, LLC*, 2016 WL 6821980 at * 2 (N.D. Ohio Nov. 18, 2016) (quoting *Hook v. Baker*, 2004 WL 3113716 at * 3 (S.D. Ohio Sept. 7, 2004)).  *See also Zeeb Holdings, LLC v. Johnson*, --- F.Supp.3d ----, 2021 WL 3398137 at * 2 (N.D. Ohio Aug. 4, 2021) ("Once the plaintiff has satisfied these procedural requirements, the inquiry then shifts to the substance of the motion for attachment.")  To succeed, the plaintiff must show that probable cause supports the motion.[11]  *Zeeb Holdings, LLC*, 2021 WL

---

[11] The Ohio statute requires different showings depending on whether a plaintiff seeks an order of prejudgment attachment with or without notice to the defendant(s).  Specifically, Ohio Rev. Code § 2715.045(A) provides that, where a plaintiff seeks an order of prejudgment attachment without notice or hearing, the plaintiff must demonstrate both probable cause and irreparable injury.  Plaintiff's initial "*Ex Parte* Motion for Prejudgment Attachment without Notice or Hearing" (Doc. No. 3) was filed pursuant to this statutory provision.  Plaintiff's "Renewed Motion," by contrast, seeks an order of attachment after notice and a hearing.  This "Renewed Motion" is governed by a different statutory provision, Ohio Rev. Code § 2715.043(A), which requires a showing of probable cause but not irreparable injury.  The Court notes that Plaintiff failed to explain this distinction in its "Renewed Motion" or clearly indicate that it was moving pursuant to a different statutory provision.  Adding to the confusion, on the first page of its "Renewed Motion," Plaintiff argues that it is entitled to an order of prejudgment attachment after notice and a hearing "in order to prevent irreparable injury" -- but then insisted, during the conference call with this Court on February 14, 2022, that it was not required to show irreparable injury.  (Doc. No. 8-1 at pp. 1-2.)

11

3398137 at * 2.  *See also Forefront Machining Technologies, Inc. v SARIX SA*, 2020 WL 804858 at

* 5 (S.D. Ohio Feb. 18, 2020); *Enable Healthcare, supra*, 2016 WL 6821980 at *2.   The term

"probable cause" is defined in § 2715.011(A) as follows:

> 'Probable cause to support the motion' means that it is likely that a plaintiff who files
> a motion for attachment pursuant to [O.R.C. § 2715.03] will obtain judgment against
> the defendant against whom the motion was filed that entitles the plaintiff to a money
> judgment that can be satisfied out of the property that is the subject of the motion.

Ohio Rev. Code § 2715.011(A).

Pre-judgment attachment of a defendant's property or assets is an "extraordinary" form of

relief.  *Data Processing Sciences Corp.*, 2016 WL 3144117 at *3. *See also Zeeb Holdings, LLC*, 2021

WL 3398137 at * 2.  The party seeking an attachment order bears the "heavy burden" of establishing

a right to attachment by a preponderance of the evidence.  *Id.  See also Hatmaker v. Papa John's

Ohio LLC*, 2021 WL 99346 at * 2 (S.D. Ohio Jan. 12, 2021), *report and recommendation adopted by*

2021 WL 849309 (S.D. Ohio Feb. 2, 2021); *Forefront Machining Techs*., 2020 WL 804858 at * 5;

*Data Processing Sciences Corp*., 2016 WL 3144117 at * 2.

## III.    Analysis

In its "Renewed Motion," Plaintiff argues that it has demonstrated that several grounds for

attachment exist under § 2715.01(a) and, further, that there is probable cause to support its request

for prejudgment attachment of Defendants' assets in the amount of $7,800,000.[12]  (Doc. No. 8-1 at

p. 13.)  Plaintiff asserts that it is entitled to an Order of Attachment in this extraordinary amount

without first having to post a bond.  (*Id*. at p. 14.)  Plaintiff requests an "emergency hearing," arguing

---

[12] In its "Renewed Motion," Plaintiff asserts that this amount is based on the Transaction Fee that it is allegedly owed to
it under the Engagement Agreement.  The Court notes, however, that, in his most recent Affidavit, Mr. Igoe states that
this Transaction Fee is "at least $9,600,000." (Doc No. 8-2 at ¶ 37.)  Moreover, in its initial *Ex Parte* Motion, Plaintiff
sought prejudgment attachment in the amount of $10,000,000.  (Doc. No. 3 at PageID# 76.)

that "once Defendant's assets are sold [to Embracer, a 'foreign country corporate entity'] and converted into money, Defendants will have no assets subject to execution against which Aragonite will be able to satisfy the money judgment it inevitably will obtain on its breach of contract claim." (*Id*. at p. 15.)

In response, Defendants argue that Plaintiff's "Renewed Motion" should be denied because (1) Plaintiff failed to file a praecipe as required by Ohio Rev. Code § 2715.041; (2) this Court lacks jurisdiction because Plaintiff has not identified (and Defendants do not have) any assets that are located in the State of Ohio; (3) Mr. Igoe's affidavit is insufficient because it is based solely on "information and belief;" (4) Plaintiff has failed to establish any of the grounds for attachment in § 2715.041(a); and (5) Plaintiff has not shown that it is likely to succeed on the merits of its breach of contract claim. (Doc. No. 17.) Lastly, Defendants argue that this Court is not, in fact, required to conduct a hearing, citing *Ohio-Carrier Concrete Cutting, Inc. v. Carrier Concrete Cutting, LLC*, 2009 WL 4932728 (Ohio App. Dec. 22, 2009). (*Id.*)

A.      **Praecipe**

Ohio Rev. Code § 2715.041(A) provides that **"[u]pon the filing of a motion for an order of attachment pursuant to section 2715.03 of the Revised Code**, the plaintiff shall file with the clerk of the court a praecipe instructing the clerk to issue to the defendant against whom the motion was filed a notice of the proceeding." *Id*. (emphasis added). The Clerk of Court then issues the notice, advising the defendant of (1) the pendency of the attachment proceedings; (2) the assets that are exempt from attachment; (3) how to oppose the attachment; and (4) the right to request a hearing on the motion. *Id. See also Zeeb Holdings, LLC*, 2021 WL 3398137 at * 2.

13

Here, Plaintiff did not file the required praecipe "upon the filing of" its "Renewed" Motion for Prejudgment Attachment.  Plaintiff acknowledged this notice deficiency during the February 14, 2022 conference and later filed a Praecipe along with its Reply Brief, on February 23, 2022.  Plaintiff now argues that dismissal on this basis is not warranted because it "adhered sufficiently closely" to the notice requirement in § 2715.041(A).  (Doc. No. 18 at p. 2.)  Specifically, Plaintiff argues that "Defendants unquestionably were provided the requisite notice through an initial telephone conference with this Court on February 14, 2022, three days after Aragonite's Motion was filed." (*Id.* at p. 2.)

The Court agrees with Defendants that dismissal is warranted based on Plaintiff's failure to strictly comply with the notice requirements set forth in Ohio Rev. Code § 2715.041(A).  Several district courts in this Circuit have reached the same conclusion.  For example, in *Browning v. University of Findlay*, 2019 WL 582351 (N.D. Ohio Feb. 13, 2019) (Carr, J.), another Judge in this District found as follows:

> It is undisputed that M.K. did not file the required praecipe. She asks me to dispense with this requirement on the ground that the targets of the attachment – plaintiffs – are on notice of her claims and have attorneys representing them. (Doc. 115 at 2).
>
> Despite the perhaps technical nature of this deficiency, I decline to overlook M.K.'s non-compliance with the praecipe requirement. **There is no room in the statute for procedural shortcuts**. *Cf. Selectronics, Inc. v. Millenia Grp., Inc.*, 2009 WL 10689608, *2 (N.D. Ohio 2009) (Aldrich, J.) (motion denied for lack of a praecipe). This is understandable, given the significant due process concerns surrounding a prejudgment attachment of assets. *E.g., Peebles v. Clement*, 63 Ohio St. 2d 814 (1980). For this reason alone, I will deny M.K.'s motion.

*Id*. at *2 (emphasis added).  *See also Zeeb Holdings, LLC*, 2021 WL 3398137 at * 1 (Carr, J.) (same));

*Selectronics, Inc. v. Millennia Grp., Inc.,* 2009 WL 10689608 at *2 (N.D. Ohio) (Aldrich, J.) (denying

plaintiff's motion for attachment because it did not file a praecipe).

14

Accordingly, Plaintiff's "Renewed Motion" is subject to dismissal due to Plaintiff's failure to the required praecipe upon the filing of its motion.[13]

### B.    Description of Property and Assets

Even if the Court were willing to overlook Plaintiff's failure to properly file a praecipe, the Court finds that Plaintiff's "Renewed Motion" would nonetheless be subject to dismissal because Plaintiff has failed to sufficiently describe the property and assets sought to be attached.

As noted *supra*, pursuant to Ohio Rev. Code § 2715.03(A) Plaintiff is required to support its motion for prejudgment attachment with an affidavit that sets forth (among other things) the following: (1) the nature and amount of plaintiff's claim, (2) "a description of the property sought and its approximate value," and (3) "to the best of the plaintiff's knowledge, the location of the property." Ohio Rev. Code § 2715.03(A).

Here, Plaintiff submits the February 11, 2022 Affidavit of its Managing Director, Brennan Igoe in support of its "Renewed Motion."  Therein, Mr. Igoe states generally that Plaintiff seeks attachment of "all the assets and property of the Company (the 'Property')."  (Feb. 11, 2022 Igoe Aff. (Doc. No. 8-2) at ¶ 35.) Mr. Igoe avers that "to the best of my knowledge and belief . . . the approximate value of the Property is in excess of $160,000,000" and, consequently, "to the best of my knowledge and belief. . . .[the] Transaction Fee due and owing to Argonite under the Engagement

---

[13] Plaintiff's reliance on *Ohio Farmers Ins. Co. v. Special Coatings, LLC*, 2010 WL 4775630 (M.D. Tenn. Nov. 16, 2010) is misplaced.  The decision in that case involved Tennessee's (rather than Ohio's) attachment statutes and, in any event, did not involve a plaintiff's failure to comply with notice provisions.  Plaintiff also relies on *Williamson v. Recovery Limited Partnership*, 2012 WL 13118448 (S.D. Ohio July 31, 2012), in which the district court declined to dismiss the plaintiff's prejudgment attachment motion despite the fact that plaintiff had failed to file the required praecipe under 2715.041(A). *Id.* at *4.  The Court is not bound by the decision in *Williamson* and declines to follow it herein.  Rather, the Court finds the reasoning in the more recent decisions in *Zeeb, Browning*, and *Selectronics* to be more persuasive in light of the significant due process concerns associated with the extraordinary remedy of prejudgment attachment, particularly here where Plaintiff seeks to attach $7,800,000 of Defendants' assets.

15

Agreement is at least $9,600,000 . . ." (*Id.* at ¶¶ 36, 37.)  Lastly, Mr. Igoe avers that "[t]o the best of my knowledge and belief, much of the Property is in the nature of intellectual property, while other physical Property is in various locations in the United States and China." (*Id.* at ¶ 38.)

The Court finds that Plaintiff has failed to satisfy the requirements of § 2715.03(A).  The Court first finds that Plaintiff has failed to sufficiently describe the property it seeks to attach.[14] Plaintiff's general statement that it seeks to attach "all of the assets and property of the Company," including unidentified intellectual and physical Property, is not sufficient.  Plaintiff fails to provide any meaningful description of either the intellectual or physical property it is seeking to attach. Indeed, if the Court were to grant the requested attachment, it would be unable to identify, with any particularity, the specific property (intellectual or otherwise) that would be the subject of the Order of Attachment.  This is insufficient to satisfy § 2715.03(A).  *See, e.g., Tyler v. Sento*, 2008 WL 11383294 at * 1 (N.D. Ohio Oct. 2, 2008) (denying motion for prejudgment attachment without a hearing where plaintiff's "affidavit is devoid of any description or location of the property to be attached.")

Second, Plaintiff fails to sufficiently identify the location of the property to be attached.  While Plaintiff claims that "much of" Defendants' property is "in the nature of intellectual property" and, thus, intangible, Plaintiff also seeks attachment of Defendants' "other physical Property."  In addition to failing to sufficiently describe the nature of this "other physical Property," Plaintiff fails to sufficiently identify its location.  Mr. Igoe states only that this physical Property is "in various locations in the United States and China." (Feb. 11, 2022 Igoe Aff. (Doc. No. 8-2) at ¶ 38.)  This is

---

[14] Defendants expressly raise this argument in their Brief in Opposition. (Doc. No. 17 at p. 5.) Plaintiff fails to address this argument in its Reply.  (Doc. No. 18.)

simply too vague and indefinite to satisfy the requirements of § 2715.03(A).  *See Zeeb Holdings, LLC*, 2021 WL 3398137 at * 3 (denying motion for prejudgment attachment without a hearing where plaintiff's affidavit "does not even mention Ohio" and "does not identify a specific geographic location" of property to be attached).

Lastly, the Court finds that Plaintiff has also failed to sufficiently identify the amount of its claim and/or the approximate value of the property sought.  As noted *supra*, Plaintiff has not consistently articulated the amount that it seeks to attach. In its initial, *Ex Parte* Motion for Prejudgment Attachment, Plaintiff sought attachment of $10,000,000.  (Doc. No. 3 at PageID# 76.) In the body of its "Renewed Motion," Plaintiff states that it is seeking to attach $7,800,000. (Doc. No. 8-1 at p. 13.)  In an Affidavit attached to that very same Motion, however, Mr. Igoe states that Plaintiff is seeking "at least" $9,600,000.  (Feb. 11, 2022 Igoe Aff. (Doc. No. 8-2) at ¶ 37.)  Given Plaintiff's lack of consistency regarding the amount sought to be attached, the Court finds Plaintiff has failed to sufficiently identify the nature and amount of its claim and/or approximately value of the property sought, as required by § 2715.03(A).

Accordingly, and for all the reasons set forth above, Plaintiff's "Renewed Motion" is subject to dismissal for failure to satisfy the requirements Ohio Rev. Code § 2715.03(A).

**C.      Jurisdiction over Property and Assets**

In addition to the above deficiencies, the Court finds that Plaintiff has failed to demonstrate that that this Court has jurisdiction over the property and assets it seeks to attach.

It is well established that Ohio's attachment statute does not apply to property that is located outside of Ohio's territorial boundaries.  *See EBSCO Indus., Inc. v. Lilly*, 840 F.2d 333, 336 (6th Cir. 1988), *partially overruled on other grounds by Grupo Mexicano de Desarrollo S.A. v. Alliance Bond*

*Fund, Inc.*, 527 U.S. 308 (1999), (noting that Ohio's attachment statutes "do not apply to assets located outside of Ohio"); *Zeeb Holdings LLC*, 2021 WL 3398137 at * 3 (same); *PCA-Corrections, LLC v. Akron Healthcare LLC*, 2021 WL 1582984 (S.D. Ohio April 22, 2021), *Commodigy OG Vegas Holdings, LLC v. ADM Labs*, 2019 WL 6716457 at *2 (N.D. Ohio Dec. 10, 2019) ("Ohio's prejudgment attachment statute cannot reach funds located outside of Ohio."); *Ashton Park Apartments, Ltd. v. Lebor*, 252 F. Supp. 2d 539, 548 (N.D. Ohio 2003).

For example, in *Commodigy, supra*, plaintiff sought to attach defendant's assets, which were located in accounts at a bank in Denver, Colorado. *Commodigy OG Vegas Holdings, LLC*, 2019 WL 6716457 at *2. This Court denied the motion, finding that "[p]laintiff has failed to identify any property or assets in Ohio over which the Court has jurisdiction to issue an order of attachment." *Id*. Likewise, in *Ashton Park Apartments, Ltd., supra*, the plaintiff moved for prejudgment attachment and identified several of the defendants' assets for attachment, including the defendants' account at a bank to which the plaintiff had previously wired $100,000 and "funds and other property located in Scotland, India, Philippines, Israel, Papua New Guinea, New Zealand, London, Mexico, Lichtenstein, Zurich and [sic] Austrailia." *Ashton Park Apartments, Ltd*., 252 F. Supp. 2d at 549. The defendants pointed out that none of these assets were located in Ohio, and the court denied the plaintiff's motion because it "fail[ed] to identify property, assets or 'debts' over which the Court has jurisdiction to issue an order of attachment." *Id*. at 548-50.

In sum, it is well-established that "Ohio federal courts lack jurisdiction to order attachment over assets that are not located in the state." *PCA-Corrections*, 2021 WL 1582984 at * 2. The movant bears the burden of showing that the property it seeks to attach is located in Ohio. *Zeeb*, 2021 WL 3398137 at * 3.

Defendants argue that Plaintiff has failed to carry its burden because Mr. Igoe's affidavit "makes no reference to property within Ohio whatsoever."  (Doc. No. 17 at p. 5.)  Defendants assert that they do not, in fact, have any property in Ohio and submit evidence in the form of the Affidavits of Dark Horse's Executive Neil Hankerson and Cenic's President Alexander Shaik in support of that assertion. *See* Declaration of Neil Hankerson (Doc. No. 17-1) (averring that "Dark Horse does not own or possess any assets or property located in the State of Ohio"); Declaration of Alexander Shaik (Doc. No. 17-2) (averring that "Cenic Media (Delaware), Inc. does not own or possess any assets or property located in the State of Ohio").

In response, Plaintiff argues that "the most significant assets owned by Defendants are intangibles." (Doc. No. 18 at p. 3.)  Plaintiff asserts that "the location of intangibles is a legal fiction" and, therefore, intangible property "would have no fixed situs and may be subject to Ohio's prejudgment attachment statute." (*Id.*)  Lastly, Plaintiff argues that the Affidavits of Mr. Hankerson and Mr. Shaik are "in essence" legal conclusions and, therefore, not entitled to any weight.  (*Id.* at p. 4.)

The Court finds Plaintiff has failed to carry its burden of demonstrating that this Court has jurisdiction over the property and assets it seeks to attach.  As noted *supra*, Plaintiff seeks to attach "all the assets and property of the Company," which it believes to be valued in excess of $160,000,000.  (Feb. 11, 2022 Igoe Aff. (Doc. No. 8-2) at ¶¶ 35, 36.)  By Plaintiff's own admission, some of the property is unidentified "physical Property."[15]  (*Id.* at ¶ 38.)  Plaintiff does not argue (and it cannot be seriously disputed) that there is a fixed situs for the physical property that it seeks to

---

[15] Presumably, this would include Defendants' bank accounts (as well as other physical assets.)  Plaintiff, however, does not allege or provide any facts to support the conclusion that any of Defendants' bank accounts are located in Ohio.

attach.  However, Plaintiff fails to even allege (must less demonstrate) that any of this unidentified physical property is located in Ohio.  Rather, Mr. Igoe offers only the general and vague averment that "[t]o the best of my knowledge and belief . . . . [Defendants'] physical Property is in various locations in the United States and China."  (*Id*.)  This is clearly insufficient to demonstrate that any of Defendants' physical property is located within the jurisdiction of this Court, particularly in light of Mr. Hankerson's and Mr. Shaik's Declarations to the contrary.

The Court also rejects Plaintiff's claim that this Court has jurisdiction over Defendants' "intangible assets."  The only evidence provided by Plaintiff in support of its request for attachment of Defendants' intangible assets is Mr. Igoe's averment that "[t]o the best of my knowledge and belief, much of the Property is in the nature of intellectual property."  (Feb. 11, 2022 Igoe Aff. (Doc. No. 8-2) at ¶ 38.)  The Court finds that to be insufficient.  Plaintiff fails to provide any facts to support Mr. Igoe's statement, instead simply asserting "upon knowledge and belief" that "much of" Defendants' Property is "in the nature of intellectual property."  Plaintiff also fails to explain what it means by the phrase "in the nature of intellectual property" or provide any facts or evidence regarding what that would potentially encompass. Indeed, Plaintiff has not identified, with any specificity whatsoever, the intellectual property belonging to Defendants that they seek to attach.  Moreover, although given every opportunity to do so, Plaintiff has not directed this Court's attention to any controlling authority supporting its argument that a federal court may exercise jurisdiction over unidentified intellectual property under similar circumstances.

Accordingly, the Court finds that Plaintiff has failed to demonstrate that this Court has jurisdiction over the property and assets it seeks to attach.

**D.   Probable Cause**

Even if Plaintiff had properly filed a praecipe, sufficiently described the property and assets sought to be attached, and demonstrated that this Court has jurisdiction over that property and assets, it would still need to establish probable cause.  For the following reasons, the Court finds that Plaintiff has failed to do so.

As noted *supra,* to establish "probable cause," Plaintiff must show that "it is likely" that it will obtain judgment against the defendant against whom the motion was filed that entitles the plaintiff to a money judgment that can be satisfied out of the property that is the subject of the motion."  Ohio Rev. Code § 2715.011(A).  Here, the parties sharply contest a number of complex factual and legal issues, including the threshold issue of whether or not Mr. He had actual and/or apparent authority to enter into the Agreement at issue.[16]  In light thereof, the Court cannot find, at

---

[16] The Court also notes, as it did during the February 14, 2022 telephone conference, that the "supplemental" evidence now attached to Plaintiff's "Renewed Motion" was in Plaintiff's possession at the time of its initial, *Ex Parte* Motion for Prejudgment Attachment but not provided to the Court.  The Court agrees with Defendants that, by presenting this evidence for the first time in its Renewed Motion, Plaintiff is essentially asking this Court to reconsider its decision on the issue of probable cause.  A court may grant reconsideration under Fed. R. Civ. P. 59(e) if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice. *See Brumley v. United Parcel Service, Inc.,* 909 F.3d 834, 841 (6th Cir. 2018).  "It is not the function of a motion to reconsider either to renew arguments already considered and rejected by a court or 'to proffer a new legal theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been discovered and offered during the initial consideration of the issue.'" *McConocha v. Blue Cross & Blue Shield Mut. of Ohio*, 930 F. Supp. 1182, 1184 (N.D. Ohio 1996).  *See also Gascho v. Global Fitness Holdings, LLC*, 918 F.Supp.2d 708, 715 (S.D. Ohio Jan. 16, 2013) ("A motion for reconsideration or to alter or amend is not a vehicle to reargue the case or to present evidence which should have been raised in connection with an earlier motion.").  Here, Plaintiff does not identify any clear error of law, newly discovered evidence, or intervening change in controlling law.  Nor has Plaintiff identified any basis on which to conclude that reconsideration is necessary to prevent a "manifest injustice."  Although Plaintiff "supplements" its "Renewed Motion" with additional exhibits, Plaintiff has not established that any of these exhibits constitute "newly discovered evidence."  To the contrary, Defendants argue (and Plaintiff does not contes) that this evidence was in Plaintiff's possession at the time it filed its initial *Ex Parte* Motion.  Moreover, Plaintiff does not identify any legal error or change in controlling law that would potentially justify reconsideration.  Rather, with regard to the issue of probable cause, Plaintiff's "Renewed Motion" simply rehashes arguments already considered and rejected by this Court in its previous Opinion. As such, to the extent Plaintiff seeks reconsideration of this Court's previous finding that Plaintiff had failed to establish probable cause, such request is not well-taken and hereby denied.

this early stage of the proceedings, that Plaintiff is "likely" to obtain judgment against Defendant, as required by Ohio Rev. Code § 2715.011(A).[17]

E.      **Request for Hearing**

Lastly, the Court addresses Plaintiff's request for an emergency hearing.  Plaintiff first argues that this issue is "moot" because the Court already scheduled a hearing on its "Renewed Motion" for March 4, 2022.  (Doc. No. 18 at pp. 8-9.)  Plaintiff further asserts that this Court properly set a hearing because it is required to conduct one pursuant to Ohio Rev. Code § 2715.043.  (*Id*.)  That statute provides as follows:

> (A) Upon the filing of the motion for an order of attachment pursuant to section 2715.03 of the Revised Code, the court shall cause the matter to be set for hearing within twenty days thereafter and the defendant shall be notified in accordance with section 2715.041 of the Revised Code.
>
> (B) If a hearing is requested in accordance with section 2715.04 of the Revised Code or if a continuance is granted in accordance with division (B) of section 2715.042 of the Revised Code, the hearing shall be limited to a consideration of whether there is probable cause to support the motion and whether any of the property of the defendant is exempt from attachment.
>
> The court shall issue an order of attachment if it finds, on the basis of the affidavit and, if applicable, the evidence presented at the hearing, that there is probable cause to support the motion.

Ohio Rev. Code §§ 2715.043(A) & (B).  Defendants argue that this Court is not required to conduct a hearing where (as here) a plaintiff has failed to meet the statutory prerequisites in Ohio's prejudgment attachment statutes.  (Doc. No. 17 at pp. 13-14.)

---

[17] Because the Court finds that Plaintiff's "Renewed Motion" is denied for all of the reasons discussed above, the Court need not address Defendants' arguments that Plaintiff failed to satisfy the requirements of §§ 2715.01(A)(1), (2) and/or (7).  Nor does the Court find it necessary to address Defendants' argument that Plaintiff should be required to post a bond.

The Court agrees with Defendants. In *Ohio-Carrier Concrete Cutting, Inc., supra*, the Ohio appellate court addressed this very issue and found that the trial court had not erred in denying plaintiff's motion for prejudgment attachment without a hearing. *Ohio-Carrier Concrete Cutting, Inc.*, 2009 WL 4932728 at * 4-5. The court explained as follows:

{¶ 16} Appellant contends that the trial court was mandated to hold a hearing prior to ruling on the motion to attach. We disagree. Appellant relies upon the language of R.C. 2715.043(A), which states in part that, "[u]pon the filing of the motion for an order of attachment pursuant to section 2715.03 * * *, the court shall cause the matter to be set for hearing within twenty days thereafter and the defendant shall be notified in accordance with section 2715.041." Pursuant to R.C. 2715.043(B), if a hearing is requested in accordance with R.C. 2715.04, "the hearing shall be limited to a consideration of whether there is probable cause to support the motion." R.C. 2715.04 pertains to a written request for a hearing by "[a] defendant against whom a motion for attachment is filed" under R.C. 2715.03.

{¶ 17} Although a "defendant" has a right to a hearing, the defendant must request such a hearing in writing or it will be cancelled. R.C. 2715.04. Further, if a defendant does not request a hearing within the prescribed time, the court may issue an order of attachment without conducting a hearing if it finds, on the basis of the affidavit, that there is probable cause to support the motion. R.C. 2715.042(A). *See also Bd. of Trustees of the Cleveland Asbestos Workers Pension Fund v. Berry Pipe & Equip. Insulation Co.*, (N.D. Ohio 2008), Case No. 1:08–01082–JG (hearing on attachment motion is not mandatory, and where defendants have not requested an evidentiary hearing, a court can attach property if it finds that probable cause supports the motion for attachment).

{¶ 18} **In the present case, the "defendant against whom [the] motion for attachment" was filed (appellee) did not request a hearing on the motion; rather, appellee requested that the motion be denied because it was deficient. Before a court may consider a plaintiff's motion, the plaintiff must satisfy several statutory prerequisites**. *See* R.C. 2715.01 and 2715.03. *See also Nationwide Mut. Ins. Co. v. Whiteford Sys., Inc*. (S.D. Ohio 1992), 787 F. Supp. 766, 768 ("[o]nly upon determining that Plaintiff has satisfied [the] requirements [of R.C. 2715.03] may the Court consider the actual motion for attachment"). **Here, however, appellant did not satisfy the minimal requirements that would permit the trial court to consider granting an order of attachment, including, as previously addressed, the submission of an affidavit setting forth facts that would support a finding that appellee fraudulently contracted the alleged debt at issue. Nor could the court have determined, based upon the affidavit presented, that there was probable cause to support the motion. Under these circumstances, the trial court did not**

23

> **err in failing to conduct a hearing, nor did the court err in denying appellant's motion to attach.**

*Id.* (emphasis added).  Additionally, this Court's research reveals that federal courts have often denied motions for prejudgment attachment without an oral hearing where the movant has failed to satisfy the statutory prerequisites in Ohio's prejudgment attachment statutes.  *See Enable Healthcare, Inc. v. Cleveland Quality Healthnet LLC*, Case No. 1:16cv2395 (N.D. Ohio) (Gaughan, J.) (Non-Document Order dated November 7, 2016; Doc. No. 34); *Tyler*, 2008 WL 11383294 at * 2.  *See also Zeeb Holdings, LLC,* 2021 WL 3398137 (denying motion for prejudgment attachment without conducting a hearing); *Browning*, 2019 WL 582351 (same).

Here, as discussed above, Plaintiff has failed to satisfy a number of the statutory prerequisites in Ohio's prejudgment attachment statutes, including the requirements to file a praecipe, sufficiently describe the property and assets sought, and demonstrate probable cause.  Accordingly, the Court finds Plaintiff is not entitled to a hearing on its "Renewed Motion."  Nor is the issue "moot" because the Court already scheduled a hearing.  This Court set a hearing in large part based on counsel for Plaintiff's insistence during the February 14, 2022 telephonic conference that a hearing was "mandatory" and this Court had "no discretion" to decline to set a hearing.  Plaintiff, however, failed to bring any of the above legal authority to this Court's attention, either in its Renewed Motion or during the February 14, 2022 conference.  Counsel for Plaintiff's failure to do so is concerning.[18]

---

[18] Counsel for Plaintiff are hereby reminded that they have a duty of candor to this Court.  *See, e.g.*, Ohio Rules of Professional Conduct, Rule 3.3 ("(a) A lawyer shall not knowingly do any of the following: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer; (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel").  The Court was also not pleased with the conduct of Plaintiff's counsel during the conference.  *Id.* at Preamble at ¶ 5 ("A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers, and public officials.")

**IV.     Conclusion**

For all the reasons set forth above, Plaintiff's "Renewed and Supplemented Motion for Prejudgment Attachment and Request for Emergency Hearing" (Doc. No. 8) is DENIED.   The hearing set for March 4, 2022 is hereby CANCELLED.   Lastly, the Court hereby directs the Clerk's Office to lift restricted access to Plaintiff's *Ex Parte* Motion for TRO and Preliminary Injunction (Doc.  No. 2) and *Ex Parte* Motion for Prejudgment Attachment (Doc. No. 3.)

**IT IS SO ORDERED.**

    *s/Pamela A. Barker*
PAMELA A. BARKER
Date:  March 2, 2022              U. S. DISTRICT JUDGE