**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ARAGONITE CAPITAL MARKETS, LLC, | ) | CASE NO. 1:22-cv-222 |
| | ) | |
| | ) | JUDGE CHARLES E. FLEMING |
| Plaintiff, | ) | |
| | ) | **ORDER DENYING** |
| v. | ) | **DEFENDANTS' MOTION TO** |
| | ) | **DISMISS ARAGONITE** |
| | ) | **CAPITAL MARKETS, LLC'S** |
| DARK HORSE MEDIA, LLC, *et al.*, | ) | **CLAIMS UNDER FRCP 12(b)(6)** |
| | ) | |
| Defendants. | ) | |

### I.  Procedural History

On February 8, 2022, Plaintiff Aragonite Capital Markets, LLC, d/b/a Argonite Partners LLC, filed a complaint alleging that Defendants Dark Horse Media, LLC ("Dark Horse Media") and Cenic Media (Delaware) Inc. ("Cenic") breached an express contract. (ECF No. 1, PageID 1–2). Plaintiff alleged that Defendants breached that contract when they failed and refused to pay Plaintiff a transaction fee owed to Plaintiff under an agreement; according to Plaintiff, the transaction fee was owed upon closing the sale of Dark Horse Media to another entity, Embracer Group AB. (ECF No. 1, PageID 5). Plaintiff filed two claims for relief: (1) breach of contract and (2) recovery of attorneys' fees. (ECF No. 1, PageID 6–7).

On March 15, 2022, Defendant Cenic filed a motion to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 27). Cenic requested the Court dismiss Plaintiff's claims because Cenic was not a party to the alleged agreement and, thus, could not have breached it. *Id*. On March 29, 2022, Plaintiff opposed Cenic's motion to dismiss. (ECF No. 34). Plaintiff argued that the contract contains the language, "Dark Horse Media (together with any present and future subsidiaries and affiliates of Dark Horse Media or Shanghai Cenic Media Co.,

Ltd., the 'Company')" which binds Cenic, Dark Horse Media's affiliate, to the contract. (ECF No. 34, PageID 414).

On April 5, 2022, Plaintiff filed its first amended complaint to add new defendants: Dark Horse Comics, LLC ("Dark Horse Comics"), Things From Another World, LLC ("TFAW"), and Dark Horse Entertainment, LLC ("Dark Horse Entertainment"). (ECF No. 35, PageID 424). Plaintiff also added two claims: (1) unjust enrichment and (2) promissory estoppel. (ECF No. 35).

On May 2, 2022, Defendants Cenic, Dark Horse Comics, Dark Horse Entertainment, and TFAW filed a motion to dismiss for failure to state a claim. (ECF No. 43). They allege they are not parties to the agreement between Plaintiff and Dark Horse Media. (ECF No. 43, PageID 495). As this motion is substantially similar to Cenic's prior motion to dismiss (ECF No. 27), the Court will consider the motions together.

On July 26, 2022, Plaintiff filed a second amended complaint. (ECF No. 52). On August 9, 2022, Defendants Cenic, Dark Horse Comics, TFAW, and Dark Horse Entertainment provided notice that they intend for their prior motion to dismiss to apply to Plaintiff's second amended complaint. (ECF No. 54, PageID 607–08).

## II.     Legal Standard

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. The "complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Center, Inc. v. Illinois Union Ins.*

*Co.*, 508 F.3d 327, 336 (6th Cir. 2007).

In assessing plausibility, the Court construes factual allegations in the complaint in the light most favorable to the Plaintiff, accepts the allegations of the complaint as true, and draws all reasonable inferences in the Plaintiff's favor. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

### III.    Analysis

The moving Defendants allege that the agreement at issue does not specifically name them, none of them signed it, and none of them are mentioned in it. (ECF No. 43). Defendants argue that they cannot be held liable for any breach of that contract because they were not a party to the contract. *Id*. Consequently, they request that Plaintiff's claims for breach of contract, unjust enrichment, and promissory estoppel be dismissed against them. *Id*.

### a.    Breach of Express Contract

To state a claim for breach of contract, Plaintiff must, at a minimum, allege that Defendants were parties to the contract and that Defendants breached the contract. Under Ohio law, formation of a valid contract includes an offer, acceptance, mutual assent, and consideration. *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002). An agent acting with apparent or express authority may enter into a contract on behalf of the principal. *Anderson v. Int'l Union*, 370 F.3d 542, 551 (6th Cir. 2004).

"Under Ohio law, the interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court." *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 763 (6th Cir. 2008). "[A] contract is 'unambiguous' if a reviewing court 'can give a definite legal meaning' to the contract's terms." *United States v. Ohio*, 787 F.3d 350, 353 (6th Cir. 2015) (quoting *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256,

1261 (Ohio 2003)). When a contract's terms are not ambiguous, the interpreting court must apply the plain language of the contract. *Savedoff*, 524 F.3d at 763. The court must presume that interpreting the plain language will give rise to the parties' intent. *Id.* Only where a contract is ambiguous may the court look to extrinsic evidence to ascertain the parties' intent. *Id.*; *Ohio*, 787 F.3d at 354.

In the second amended complaint, Plaintiff alleges that on or about January 26, 2021, Hanson He, on behalf of Defendant Dark Horse Media and the moving Defendants, executed a written agreement with Plaintiff. (ECF No. 52, PageID 571). The agreement engaged Plaintiff as Defendants' sole and exclusive financial advisor, during the term of the agreement, to advise and assist the Defendants in connection with the planning, execution, and closing of a "Sale" as defined in the agreement. *Id.* Plaintiff alleges that the moving Defendants are parties to the agreement because it explicitly included "any present and future subsidiaries and affiliates," and each of the moving Defendants is a subsidiary or affiliate of Dark Horse Media. (ECF No. 52, PageID 569–73, 583).

Defendants admitted in their motion that Cenic owns 80% of Dark Horse Media, while Dark Horse Media owns 100% of Dark Horse Comics, TFAW, and Dark Horse Entertainment. (ECF No. 43). Plaintiff properly alleged this information in its second amended complaint and identified that each of the moving Defendants is an affiliate of Dark Horse Media. (ECF No. 52, PageID 569–71). The agreement attached to the complaint states,

> This engagement letter (this "Agreement") is to confirm our understanding of the basis upon which Argonite Partners ("Argonite") is being engaged by Dark Horse Media (together with any present and future subsidiaries and affiliates of Dark Horse Media or Shanghai Cenic Media Co., Ltd., the "Company") to provide the services described herein.

(ECF No. 52, PageID 583). The agreement affirmed that the "Company" is engaging Plaintiff as

their "sole and exclusive agent for the purpose of advising and assisting the Company in connection with the planning, execution and closing of a sale, investment, or recapitalization." *Id*. It also states that "[i]f a Sale occurs… during the term of Argonite's engagement hereunder, or at any time during a period of 12 months following the effective date of termination of Argonite's engagement hereunder… then, upon consummation of the Sale, the Company shall pay to Argonite a cash fee equal to 6% of Consideration." (ECF No. 52, PageID 585).

The agreement does not define the terms "subsidiaries" or "affiliates." The Sixth Circuit has defined "affiliate" as a relationship in which one party has substantial control or unusual amount of control over the other. *Pope v. Carl*, 742 F. App'x 123, 128–29 (6th Cir. 2018). The *Pope* court discerned this definition of "affiliate" from Black's Law Dictionary, which defines "affiliate" as "a corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." *Id*. The Ohio Revised Code similarly defines the term affiliate within the context of transactions involving shareholders as "a person that directly, or indirectly through one or more intermediaries, controls, is controlled by, is under common control with, or acts in concert with, a specified person. O.R.C. § 1704.01(C)(1). In light of these definitions and viewing the second amended complaint in the light most favorable to Plaintiff, Cenic is a parent of Dark Horse Media and has substantial control over Dark Horse Media. Consequently, Cenic is an affiliate of Dark Horse Media. Dark Horse Media owns Dark Horse Comics, Dark Horse Entertainment, and TFAW. It follows that they are subsidiaries and are substantially controlled by Dark Horse Media. They are also affiliates of Dark Horse Media. Reading the unambiguous, plain language of the agreement, the moving Defendants are parties to the agreement.

The moving Defendants' primary argument is that they are not explicitly named in the

alleged contract and the signature block of the agreement indicates that only Dark Horse Media signed the document. (ECF No. 43). As alleged in the second amended complaint, the affiliates became parties based on the signature of Hanson He. (ECF No. 52, PageID 571–73). Hanson He is Dark Horse Media's alleged agent with actual or apparent authority to bind Defendants. *Id*. The fact that the affiliates are not separately identified in the signature does not, standing alone, warrant dismissal. *See*, *e.g.*, *Roberts v. KND Development 51, LLC.*, 2020-Ohio-4986, 2020 WL 6193635 (Ohio App. 2020) (rejecting argument that defendants were not parties even though they were not specifically identified in agreement and did not separately sign document, where each defendant was alleged to be a "parent, subsidiary or affiliate"). Thus, the Court rejects the Defendants' argument that a signature on behalf of each separate entity is required to establish the existence of a contract.

As Plaintiff has plausibly alleged that moving Defendants were a party to the alleged contract, the only remaining issue is whether a plausible breach of that contract was adequately pleaded. Plaintiff alleged that on March 2, 2022 Embracer Group AB consummated a sale where Embracer acquired 100% of Dark Horse Media, Dark Horse Comics, TFAW, and Dark Horse Entertainment. (ECF No. 52, PageID 576). Plaintiff alleges that this sale occurred during a period of time protected under the alleged contract and that Defendants owe it a transaction fee for the sale. *Id*. Despite demand by Plaintiff, Defendants have failed and refused to pay Plaintiff the alleged transaction fee. *Id*. The Court finds that these allegations sufficiently raise a claim for breach of express contract that is plausible on its face. Accordingly, the Court **DENIES** Defendants' motion to dismiss Plaintiff's breach of contract claim pursuant to F.R.C.P. 12(b)(6).

    b. **Unjust Enrichment**

Defendants' challenge of Plaintiff's claim for unjust enrichment, in the alternative, relies

heavily on their argument that they were not a party to the contract. (ECF No. 43). However, Plaintiff is only seeking unjust enrichment in the event that the Court eventually concludes that the agreement does not constitute an express contract that is legally binding and enforceable against Defendants. (ECF No. 52, PageID 579). Consequently, even if Defendants had prevailed at having Plaintiff's breach of contract claim dismissed against them, that would not affect the Court's analysis of whether Plaintiff's unjust enrichment claim is sufficiently pleaded.

Unjust enrichment may be pleaded in the alternative when the existence of an express contract is in dispute, as in this case. *Resource Title Agency v. Morreale Real Estate Services, Inc.*, 314 F.Supp.2d 763, 772 (N.D. Ohio 2004). The elements of unjust enrichment that Plaintiff must assert are: 1) a benefit conferred by Plaintiff upon Defendants; 2) knowledge of the benefit by Defendants; and 3) retention of the benefit by Defendants under circumstances where it is unjust to do so without payment. *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984). Plaintiff's second amended complaint alleged that it conferred a benefit upon all Defendants by "(a) developing a plan for attracting potential investors/lenders to the Companies, (b) introducing the Companies to potential investors/lenders, (c) soliciting and obtaining offers from potential investors/lenders to inject capital into the Companies, and (d) generally generating market interest in Dark Horse Media and the other Companies." (ECF No. 52, PageID 578).

The moving Defendants argue that a benefit can only be conferred when there is a direct economic transaction between the two parties. (ECF No. 43 (citing *Caterpillar Fin. Servs. Corp. v. Harold Tatman & Son's Ents., Inc.*, 50 N.E.3d. 955, 967 (Ohio App. 2015))). However, the cases cited by Defendants are inapposite because they consider the purchase of goods by Plaintiff from a party not involved in the litigation. *See* Caterpillar, 50 N.E.3d at 967 (involving the purchase of "a Vermeer grinder" from a different party than defendant); *Johnson v. Microsoft*

*Corp.*, 834 N.E.2d 791, 799 (Ohio 2005) (plaintiff did not directly purchase goods from the defendant). Here, Plaintiff believed they were entering into an agreement with Dark Horse Media and "any present and future subsidiaries and affiliates of Dark Horse Media" to provide the services they described in their allegations. (ECF No. 52, PageID 583). As noted before, the moving Defendants constitute affiliates of Dark Horse Media. Consequently, just because the moving Defendants want to argue that they were not parties to the agreement does not mean that they did not have a benefit conferred on them by Plaintiff. The alleged actions that Plaintiff took to confer a benefit on Defendants were intended to benefit all Defendants, not just Dark Horse Media.

The moving Defendants do not challenge whether Plaintiff has sufficiently pleaded that Defendants knew of the benefit and retained it without paying Plaintiff, so the Court will not analyze the sufficiency of those pleadings. Accordingly, Defendants' motion to dismiss Plaintiff's unjust enrichment claim is **DENIED**.

    c. **Promissory Estoppel**

Defendants' attempts to dismiss Plaintiff's promissory estoppel claim fail for similar reasons. First, Defendants argue that Plaintiff's claim for promissory estoppel should be dismissed as duplicative of the breach of contract claim. (ECF No. 43). However, Plaintiff's promissory estoppel claim, like the unjust enrichment claim, is pleaded in the alternative. (ECF No. 52, PageID 579–80). Plaintiff is not seeking to recover under this claim if their breach of contract claim prevails.

To establish a claim of promissory estoppel, Plaintiff must prove: "[1] a promise, clear and unambiguous in its terms; [2] reliance [on the promise] by the party to whom the promise is made; [3] that the reliance was reasonable and foreseeable; and [4] that the party claiming estoppel was

injured by the reliance." *Andersons Inv. v. Consol, Inc.*, 348 F.3d 496, 503 (6th Cir. 2003). Defendants contend that the agreement reveals that only Dark Horse Media purportedly made any kind of promise to Plaintiff. (ECF No. 43). The Court has previously stated that the agreement highlights that Plaintiff believed it was entering an agreement with Dark Horse Media and the subsidiaries and affiliates of Dark Horse Media, which includes the moving Defendants. Even if that agreement is not binding, Plaintiff believed that Defendants promised to render payment for Plaintiff's services, which included finding potential investors/lenders for all Defendants. (ECF No. 52, PageID 579). As the moving Defendants do not contend that any alleged promise by Dark Horse Media was unclear and ambiguous, the Court will not consider the sufficiency of the pleadings in that respect.

Defendants contend that Plaintiff failed to plead adequate facts to show a plausible claim of reasonable reliance. (ECF No. 43). Reliance is reasonable if "the party claiming estoppel did not know and could not have known that its adversary's conduct was misleading." *Olympic Holding Co., LLC v. ACE Ltd.*, 909 N.E.2d 93, 101 (Ohio 2009). In reviewing Plaintiff's second amended complaint, there are numerous factual allegations concerning Plaintiff's reasonable reliance on the promise(s) made to them by Defendants. (ECF No. 52). Plaintiff alleged that Dark Horse Media and the other Defendants engaged in meetings and other communications with Plaintiff, entered into non-disclosure and confidentiality agreements with twenty potential investors/lenders that Plaintiff introduced to Defendants, attended meetings with six potential investors/lenders that Plaintiff introduced to Defendants, and considered two separate term sheets or letters of intent submitted by potential investors/lenders that Plaintiff introduced to Defendants. (ECF No. 52, PageID 573–74). Defendants also paid Plaintiff the first $25,000 installment of the agreed $50,000 retainer fee, provided Plaintiff information concerning Defendants and their

respective businesses and financial affairs, and entertained inquiries and offers from potential investors/lenders that Plaintiff introduced to Defendants.  (ECF No. 52, PageID 574).  These actions would not have indicated to Plaintiff that Defendants were being misleading and did not intend to render payment for Plaintiff's services as promised.  Consequently, Plaintiff has plausibly alleged that its reliance on Defendants' promise was reasonable.  Accordingly, the Court **DENIES** the Defendants' motion to dismiss Plaintiff's promissory estoppel claim.

The Court **DENIES** Defendant Cenic's and Defendants Cenic, Dark Horse Comics, Dark Horse Entertainment, and TFAW's motions to dismiss.  (ECF No. 27 and 43).  The Court **ORDERS** Defendants Cenic, Dark Horse Comics, Dark Horse Entertainment, and TFAW to answer Plaintiff's second amended complaint (ECF No. 52) within fourteen days of the issuance of this decision.

**IT IS SO ORDERED**.

Dated:  March 28, 2023

*/s/ Charles Fleming*

**HONORABLE CHARLES E. FLEMING**
**UNITED STATES DISTRICT JUDGE**